UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAYMOND D. COOK,

                                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

<u>DECISION & ORDER</u>

18-CV-0726MWP

## **PRELIMINARY STATEMENT**

Plaintiff Raymond D. Cook ("Cook") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been assigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 20).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 18). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Cook's motion for judgment on the pleadings is denied.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Cook's Contentions**

Cook contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10, 19). First, Cook maintains that the ALJ improperly rejected the only medical opinion of record rendering the ALJ's RFC assessment unsupported by a medical opinion of Cook's functional capacities. (Docket ## 10-1 at 14-20; 19 at 12). Second, Cook maintains that the ALJ's credibility analysis was flawed. (Docket ## 10-1 at 20-26; 19 at 2-4).

III.    **Analysis**

A.      **The ALJ's RFC Assessment**

I turn first to Cook's challenge to the ALJ's RFC assessment on the grounds that he did not properly weigh the consultative examiner's opinion. Specifically, Cook maintains that the RFC finding was "based upon the ALJ's own lay opinion" because the ALJ gave "diminished weight" to the consultative medical opinion of Hong-Biao Liu ("Liu"), MD, which was the sole medical opinion in the record related to Cook's physical limitations. (Docket # 10-1 at 14). Cook contends that the ALJ essentially "rejected" this opinion and reached the RFC assessment based on his own lay opinion. (*Id.* at 15).

4

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order). An ALJ should also consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d))[1].

Here, the ALJ found that Cook had the severe impairment of diabetes mellitus. (Tr. 13).[2] The ALJ determined that Cook retained the RFC to perform a full range of light work, except that Cook could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and was unable to climb ladders, ropes or scaffolds, or work in hazardous environments. (Tr. 15). In reaching this RFC determination, the ALJ relied in part on Liu's May 13, 2015 internal medicine examination of Cook. (Tr. 338-42). At that examination, Cook reported that he had diabetes and low back pain, characterized by numbness and tingling in his

---

[1] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

[2] References to page numbers in the Administrative Transcript (Docket # 8) utilize the internal Bates-stamped pagination assigned by the parties.

5

legs, caused by a recent fall. (*Id.*). Cook stated that "cold weather and exercise" exacerbated his low back pain. (*Id.*).

Liu noted upon examination that Cook "appeared to be in no acute distress." (*Id.*). Cook's gait and stance were normal, he used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). According to Liu, Cook had moderate difficulty performing the heel and toe walk and was only able to squat forty percent due to low back pain. (*Id.*). As it related to Cook's musculoskeletal examination, Liu reported that Cook's cervical spine showed full flexion, extension lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Cook's thoracic spine contained no signs of scoliosis, kyphosis, or abnormality. (*Id.*). His lumbar spine's flexion and extension were limited to seventy degrees and the lateral flexion and rotation left to right were limited to twenty degrees. (*Id.*). Liu noted that straight leg tests were positive bilaterally at forty-five degrees and that Cook had full range of motion in his shoulders, elbows, forearms, and wrists bilaterally, as well as in his hips, knees, and ankles bilaterally. (*Id.*). Cook's joints were also stable and nontender. (*Id.*). Liu also reported that Cook had no sensory deficits, no muscle atrophy in his extremities, and his hand and finger dexterity were intact, with 5/5 grip strength bilaterally. (*Id.*). In terms of activities of daily living, Cook stated that he cooked twice a week, cleaned the house three times a week, and occasionally dressed. (*Id.*). He enjoyed watching television. (*Id.*).

Based upon his examination of Cook, Liu opined that Cook's prognosis was "stable" and that he had "mild to moderate limitations for prolonged walking, bending, and kneeling." (*Id.*). Liu recommended a reevaluation in a few months because Cook's low back pain was caused by a very recent fall. (*Id.*). The ALJ afforded Liu's opinion "some weight,"

6

noting that the opinion was "consistent with his internal examination notes, which indicate [Cook] has some physical limitations due to pain," but noting that the opinion was stated in terms "such as mild and moderate" rather than in "functional terms." (Tr. 17).

Turning to Cook's first challenge, I reject the contention that the ALJ reached his RFC determination without relying on a medical opinion and thus based it on his own lay interpretation of the medical evidence. (*See* Docket # 10-1 at 14-20). Initially, I disagree that the ALJ "rejected" Liu's opinion because the ALJ gave it "some weight." The ALJ's RFC determination clearly incorporated the "mild to moderate limitations" opined by Liu "for prolonged walking, bending, and kneeling" (Tr. 341), which is demonstrated by the ALJ's determination to limit Cook to light work, with only occasional balancing, stooping, kneeling, and crouching (Tr. 15). *See*, *e.g.*, *April B. v. Saul*, 2019 WL 4736243, *5 (N.D.N.Y. 2019) ("moderate limitations in standing and walking are consistent with light work"); *Gerry v. Berryhill*, 2019 WL 955157, *3 (E.D.N.Y. 2019) ("[c]ourts within this Circuit have held that opinions of similar 'mild to moderate limitations' [for standing, walking, climbing, bending, lifting, carrying, and kneeling] support RFC findings that claimants are capable of 'light work'") (collecting cases); *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("postural limitations of moderate or lesser severity are generally considered consistent with the demands of light work"); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. 2016) (finding that moderate limitations with respect to "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying . . . are frequently found to be consistent with an RFC for a full range of light work") (collecting cases); *Nelson v. Colvin,* 2014 WL 1342964, *12 (E.D.N.Y. 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [the doctor's] assessment of 'mild to moderate limitation for ... bending'").

7

An ALJ does not necessarily "reject" opinion evidence when the opinion is assessed less than controlling weight and where, as here, it is evident that the ALJ's RFC determination incorporates limitations contained in that opinion.³ *See*, *e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject [the doctors'] opinions; instead, she afforded them 'partial' and 'some' weight and . . . relied on portions of them to determine [claimant's] RFC[;] . . . [j]ust because the ALJ did not afford either [doctor's] opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions"); *see also Harris v. Berryhill*, 2017 WL 4112022, *3 (W.D.N.Y. 2017) ("[p]laintiff contends that the ALJ improperly 'rejected' [doctors'] opinions [which the ALJ afforded 'less than significant weight'] without citing to another medical opinion[;] [p]laintiff overstates the ALJ's actions[;] [t]he ALJ did not 'reject' these opinions[;] [t]o the contrary, he gave them some weight and incorporated certain of the limitations set forth therein into his RFC finding"); *Bockeno v. Comm'r of Soc. Sec.*, 2015 WL 5512348, *5 (N.D.N.Y. 2015) ("the ALJ did not outright reject [doctor's]

---

³ Irrespective of the terminology used by the ALJ, whether it be "great weight," "little weight," "some weight," or "no weight," the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence. *Compare Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], . . . and nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); *with Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, *6 (W.D.N.Y. 2019) ("[a]lthough the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors"); *Harrington v. Colvin*, 2015 WL 790756, *17 (W.D.N.Y. 2015) (same); *Crawford v. Astrue*, 2014 WL 4829544, *21 (W.D.N.Y. 2014) ("the ALJ's RFC assessment adopted the limitations assessed by [the physician] that were supported by the evidence and . . . his decision to afford [the physician] limited weight did not create a gap in the record").

opinion, but afforded his opinion 'little weight'[;] [t]he ALJ's RFC determination includes non-exertional mental limitations, some of which are consistent with the limitations imposed by [doctor] and supported by other medical evidence in the record"). Here, the ALJ did not completely reject Liu's medical opinion; rather, he incorporated Liu's assessed limitations into the RFC. I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the medical evidence.[4] *See Glab v. Comm'r of Soc. Sec.*, 2018 WL 3422062, *3 (W.D.N.Y. 2018) ("[i]t is well-established that the opinion of a consultative examiner can constitute substantial evidence supporting an ALJ's decision") (citation and quotations omitted). Therefore, I find that remand is not warranted on this basis.

Moreover, I conclude that the ALJ's RFC assessment was supported by substantial evidence. Cook testified that he was unable to work primarily due to neuropathy in his feet, legs, and arms caused by diabetes. (Tr. 81-84). The record reflects that although Cook sought treatment for his diabetes, including repeated episodes of diabetic ketoacidosis, none of his medical records suggest that he complained of neuropathy or that any of his treatment providers observed neuropathy upon examination. (Tr. 36, 46, 310, 314, 347, 383, 394, 398-99, 402, 406, 414). To the contrary, the records suggest that Cook did not suffer from numbness in his extremities. (Tr. 46, 312, 316, 348, 396). Further, despite Cook's complaints of debilitating pain, he was able to routinely engage in daily activities, including caring for his personal

---

[4] Cook's contention that the record was incomplete because Liu's recommendation that he be reevaluated was not acted upon is likewise without merit. (Docket ## 10-1 at 16; 19 at 2). Nothing in the record suggests that Cook's back condition deteriorated to such an extent that Liu's evaluation would have been rendered stale. *See, e.g.*, *Beckles v. Comm'r of Soc. Sec.*, 2019 WL 4140936, *6 (W.D.N.Y. 2019) (concluding medical opinion was not stale where "[plaintiff] does not point to any record evidence demonstrating that his condition deteriorated during the relevant period"). To the contrary, the medical records suggest that Cook's back pain, although reportedly intense after his fall in the Spring of 2015, diminished over time and with treatment. (Tr. 46, 82, 394-97, 402-11, 420).

hygiene, cooking, and cleaning. (Tr. 336). The ALJ's RFC accounted for Cook's physical impairments by limiting him to light work with postural limitations. Thus, the ALJ's RFC assessment was reasonable and supported by substantial evidence.

### B. Evaluation of Cook's Subjective Complaints

I turn next to Cook's contention that the ALJ improperly discounted his subjective complaints by emphasizing his noncompliance with treatment without considering potential explanations for his noncompliance.[5] (Docket ## 10-1 at 20-26; 19 at 2-4). For the reasons explained below, I find that Cook's challenge lacks merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929.[6] First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther

---

[5] In making this argument, Cook relies on social security ruling ("SSR") 96-7P, 1996 WL 374186 (S.S.A. July 2, 1996). (Docket # 10-1 at 21-22). This ruling was superseded by SSR16-3P, 2017 WL 5180304, which is applicable to decisions issued on or after March 28, 2016.

[6] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

factors concerning [the claimant's] functional limitations and
restrictions due to pain or other symptoms.

See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

Although an ALJ may properly consider a claimant's noncompliance with recommended treatment in evaluating his subjective symptoms, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the noncompliance. *See* SSR 16-3p, 2017 WL 5180304 at *9 ("[w]e will not find an individual's symptoms inconsistent with the evidence in the record on th[e] basis [of noncompliance] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"); *Greene v. Berryhill*, 2018 WL 8646666, *8 (D. Conn. 2018) ("[b]efore drawing an inference, the ALJ must consider possible reasons he or she may not comply with treatment") (internal quotations omitted).

Here, the ALJ found that Cook's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16). In reaching this determination, the ALJ recounted Cook's treatment history for his diabetes mellitus, including the records that reflected that Cook was not compliant with treatment recommendations, repeatedly rejected receipt of emergency care against medical advice, and generally took "little ownership over his condition." (Tr. 15-17). Contrary to Cook's contentions, the ALJ specifically acknowledged that some of Cook's difficulty with compliance stemmed from his homelessness and lack of insurance. (Tr. 16 ("[t]he claimant is homeless and does not have a regular routine or place to sleep[;] . . . [t]he claimant testified that he is not always able to take his diabetes medication

11

because it is stored in the refrigerator at other people's houses and he is unable to get there regularly"); 17 ("[t]he claimant reported that he had run out of insulin because his insurance had lapsed")). The ALJ concluded that the record demonstrated that Cook suffered from exertional and postural limitations due to his poorly controlled diabetes and low back pain, but that his complaints of more severe limitations were not consistent with the longitudinal medical record and his activities of daily living. These were appropriate considerations for the ALJ's determination. *See*, *e.g.*, *Herrington v. Berryhill*, 2019 WL 1091385, *7 (D. Conn. 2019) ("it is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility") (collecting cases); *Garner v. Colvin*, 2015 WL 5537688, *2 (N.D.N.Y. 2015) ("[claimant's] testimony regarding the severity of her symptoms and her functional limitations is inconsistent with her own statements to medical providers as well as the medical signs and findings contained in her treatment records"); *Nicholson v. Colvin*, 2015 WL 1643272, *7 (N.D.N.Y. 2015) ("[t]he ALJ properly considered [p]laintiff's failure to comply with medication treatment as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen"). The ALJ appropriately evaluated Cook's subjective symptoms for their consistency with the record, and I conclude that his determination is supported by substantial evidence and that remand is not warranted on this ground.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 18)** is **GRANTED**. Cook's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Cook's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
         March 9, 2020